**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| MACK GREEN, ROBYNNE BARBER, MICHAEL KENNEDY, LEON GILMER, MICHAEL A. ROBERTSON, DAVID THOMAS, EDDIE L. OLIVER, and ANDRE T. SHIPP, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SUPERSHUTTLE INTERNATIONAL, INC., SUPERSHUTTLE FRANCHISE CORPORATION, and SUPERSHUTTLE OF MINNESOTA, INC.,<br><br>Defendants. | Court File No. 09-CV-02129 (ADM/JJG)<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS OR STAY AND COMPEL ARBITRATION** |

Defendants SuperShuttle International, Inc. ("SuperShuttle International"), SuperShuttle Franchise Corporation ("SuperShuttle Franchise") and SuperShuttle of Minnesota, Inc. ("SuperShuttle Minnesota") (collectively, "SS" or "Defendants"), respectfully submit this Memorandum of Law in Support of their Motion to Dismiss or Stay and Compel Arbitration.

## INTRODUCTION

The eight named Plaintiffs in this action are current and former franchisees of Defendant SuperShuttle Minnesota. As franchisees, Plaintiffs used their own passenger vans to transport airline passengers, for a charge, to and from the Twin Cities

International Airport. Throughout the entirety of their relationships with SuperShuttle, Plaintiffs knowingly and voluntarily were parties to franchise agreements and subject to multiple regulations governing franchisees and transportation. Plaintiffs' relationships were expressly set forth in their SuperShuttle Unit Franchise Agreements ("UFAs") which each Plaintiff signed. Despite their acknowledgment and treatment as franchisees who had the ability to hire their own employees, Plaintiffs now claim that they were themselves "employees" entitled to various wages and benefits under Minnesota law. Plaintiffs also claim that they are entitled to restitution of all franchise fees they paid to Defendants pursuant to their UFAs.

As demonstrated below, Plaintiffs' claims in this Court must be dismissed *ab initio* because they are subject to arbitration. Plaintiffs' UFAs each contain arbitration provisions in which each Plaintiff agreed to arbitrate "*any* controversy arising out of this Agreement . . . ." (Robertson Decl., ¶¶ 5-12 at § 15(G) (emphasis added)). Because Plaintiffs' claims are based on their allegations that Defendants misclassified them as "franchisees" in their UFAs and wrongfully required them to pay franchise-related fees pursuant to their UFAs, Plaintiffs' claims fall squarely within the scope of the UFAs' broad arbitration provisions and must therefore be arbitrated.

All of Plaintiffs' claims should be dismissed for the additional reason that each Plaintiff agreed to resolve his or her own disputes with Defendants on an individual basis. Specifically, Plaintiffs' UFAs contain a class action waiver provision that expressly states that "any arbitration, suit, action or other legal proceeding shall be conducted and resolved on an individual basis only and not on a class-wide, multiple plaintiff,

2

consolidated or similar basis." (Robertson Decl., ¶¶ 5-12 at §15(I)). Plaintiffs' "class" claims should be dismissed because they expressly agreed not to pursue them on a class-wide basis.

For these reasons, the Court should dismiss each of Plaintiffs' claims in their entirety or, alternatively, should stay further proceedings and compel Plaintiffs to submit their claims to the arbitration procedure agreed to in their UFAs.

## FACTUAL BACKGROUND

Plaintiffs are current and former franchisees of SuperShuttle Minnesota. (Robertson Decl., ¶ 4).[1] As franchisees, Plaintiffs entered into franchise agreements and leased or purchased their own vans to provide airport shuttle service to passengers at the Twin Cities International Airport. (Robertson Decl., ¶¶ 4-12).

Each Plaintiff, after receiving the disclosures mandated by franchise law, voluntarily entered into a SuperShuttle Unit Franchise Agreement ("UFA") which set forth the terms of the relationship between themselves and SS, including remuneration, franchise fees, leasing or purchasing of vans, and general operating procedures. (Robertson Decl., ¶ 5-12). Each UFA expressly provides that no franchisee has an employment relationship with SS:

---

[1] SuperShuttle Minnesota is a wholly owned subsidiary of Defendant SuperShuttle International. (Robertson Decl., ¶ 2). Defendant SuperShuttle Franchise (also a wholly owned subsidiary of SuperShuttle International) owns and maintains all SuperShuttle trademarks, coordinates all regional franchise filings and oversees SuperShuttle's national dispatch and reservations system. (Robertson Decl., ¶ 3).

3

> N. Relationship of Parties
>
> (1) Nothing herein contained shall be deemed or construed to create the relationship of principal and agent, partnership, joint venture or employment, or a fiduciary relationship, and the Franchisee shall not hold itself out as an agent, legal representative, partner, subsidiary, joint venturer, servant or employee of [SuperShuttle Minnesota] or any affiliate of [SuperShuttle Minnesota].  With respect to all matters pertaining to the operation of the business conducted hereunder, the Franchisee is, and shall be, an independent contractor. . . .
>
> (2) It is acknowledged that the Franchisee is the independent owner of its business, shall be in full control thereof, and shall conduct such business in accordance with its own judgment and discretion, subject only to the provisions of this Agreement. . . .

(Robertson Decl., ¶¶ 5-12 at § 15(N)(1-2) (pre-2008 UFAs), § 15(O)(1-2) (2008 and 2009 UFAs)).

These UFAs each contained arbitration provisions, through which each Plaintiff expressly agreed to arbitrate *all* claims arising out of his or her UFAs.  (Robertson Decl., ¶¶ 5-12 at § 15(G)).  Specifically, the UFAs' arbitration provision states that:

> any controversy arising out of this Agreement shall be submitted to the American Arbitration Association at its offices in Minneapolis, Minnesota for final and binding arbitration in accordance with its commercial rules and procedures which are in effect at the time the arbitration is filed.

(Robertson Decl., ¶¶ 5-12 at § 15(G)).  In addition, each Plaintiff voluntarily and knowingly agreed to waive participation in any class action.  The UFAs signed by each Plaintiff provide that "any arbitration, suit, action or other legal proceeding shall be conducted and resolved on an individual basis only *and not on a class-wide, multiple*

4

*plaintiff, consolidated or similar basis.*"   (Robertson Decl., ¶¶ 5-12 at § 15(G), § 15(I) (emphasis added)).[2]

Notwithstanding their agreements to arbitrate individually and to not seek class relief, on July 13, 2009, Plaintiffs filed their Complaint in the District Court of Hennepin County, Minnesota asserting claims arising out of their UFAs.  On August 12, 2009, Defendants removed Plaintiffs' Complaint to this Court under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").  (Dkt # 1).[3]

Plaintiffs' Complaint alleges that Defendants misclassified Plaintiffs as "franchisees," when, according to Plaintiffs, they actually were "employees" under Minnesota law.  (Compl., ¶¶ 28, 29).  Plaintiffs allege that Defendants' alleged misclassification of Plaintiffs was accomplished through the UFAs and related agreements.  (Compl., ¶ 30).  As a result of allegedly being misclassified through their UFAs, Plaintiffs allege that they suffered various damages under Minnesota law, including lost wages and benefits under the Minnesota Fair Labor Standards Act ("MFLSA") and Minnesota Payment of Wages Act ("MPWA") and lost amounts in the form of franchise-related fees Plaintiffs paid to Defendants under the terms of the UFAs and related agreements.  (Compl., ¶¶ 31-38, 51).  Thus, Plaintiffs seek damages under the

---

[2] Beginning in 2008, the UFA was revised to include a separate provision entitled "Agreement to Resolve Disputes on Individual Basis." (Robertson Decl., ¶¶ 5-8, 11-12 at § 15(I) (2008 and 2009 UFAs)).  Prior to 2008, the agreement not to bring a class action was found in the UFA's general arbitration provision. (Robertson Decl., ¶¶ 5-6, 8-10, 12 at § 15(G) (pre-2008 UFAs)).  Both agreements include the language quoted above.

[3] On August 14, 2009, Plaintiffs moved for an order remanding this case to the District Court of Hennepin County.  (Dkt # 5).  At this time, Plaintiffs have yet to file a memorandum in support of their motion to remand.

5

MFLSA and MPWA (Compl., ¶¶ 31-38) and seek a "refund and restitution [of] all monies paid to Defendants under the [UFAs and related agreements]." (Compl., ¶ 51).

On August 19, 2009, Defendants filed their Answer. (Dkt # 8.) In their Answer, Defendants asserted Defenses based on Plaintiffs' agreements to arbitrate their claims and to not bring a class action in any forum. (*Id.* at pp. 16-17.)

## ARGUMENT

Pursuant to Fed. R. Civ. P. 12(c) and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), Plaintiffs' Complaint should be dismissed or, in the alternative, stayed and Plaintiffs should be ordered to submit their individual claims to arbitration in accordance with the UFAs' arbitration provisions. As explained below, Plaintiffs' claims fall squarely within the scope of the types of disputes that the parties agreed would be determined solely by an arbitrator – and not by a court. Moreover, Plaintiffs' class claims should be dismissed for the independent reason that each Plaintiff expressly waived any procedural right to bring a claim as a class action against Defendants.

**I.     The Court Should Dismiss Plaintiffs' Claims Because Plaintiffs Expressly Agreed To Arbitrate All Their Claims.**

   **A.     The Applicable Legal Framework**

It is well established that the FAA embodies "a strong federal policy favoring arbitration." *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (noting the "emphatic federal policy in favor of arbitral dispute resolution"). In light of that strong federal policy, the Supreme Court has long instructed that "any doubts

6

concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The party resisting arbitration "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Madol v. Dan Nelson Auto. Group*, 372 F.3d 997, 999 (8th Cir. 2004). Thus, in the presence of an arbitration agreement, courts should find the dispute at issue subject to arbitration, "unless it may be said with positive assurance that the arbitration clause is *not susceptible* of an interpretation that covers the asserted dispute." *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986); *accord Industrial Wire Prods., Inc. v. Costco Wholesale Corp.*, 576 F.3d 516, 520, 521 (8th Cir. 2009).

Consistent with those standards, the Eighth Circuit has "made clear that when reviewing an arbitration clause, [the court] ask[s] only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Faber*, 367 F.3d at 1052. Under such circumstances, the district court must compel arbitration. *Id.* Moreover, the court's inquiry is limited to addressing "only such issues as are essential to defining the nature of the forum in which a dispute will be decided." *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001). Thus, the court's review does *not* extend "to the consideration of public policy advantages or disadvantages resulting from the enforcement of the [arbitration] agreement," *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 682 (8th Cir. 2001), nor to questions concerning the remedies available in arbitration because such questions "do not affect the validity of the agreement to arbitrate," *Arkcom Digital Corp. v. Xerox Corp.*, 289 F.3d 536, 537 (8th Cir. 2002).

7

### B. Plaintiffs Agreed To Arbitrate Their Claims

The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction *shall be valid, irrevocable and enforceable*." 9 U.S.C. § 2 (emphasis added); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23 (1991); *Franke v. Poly-America Med. and Dental Benefits Plan*, 555 F.3d 656, 658 (8th Cir. 2009).

Here, there can be no dispute that each Plaintiff entered into a valid, irrevocable and enforceable agreement to arbitrate all of his or her claims in the Complaint. Indeed, the UFA signed by each Plaintiff expressly provides:

> [A]ny controversy arising out of this Agreement shall be submitted to the American Arbitration Association at its offices in Minneapolis, Minnesota for final and binding arbitration in accordance with its commercial rules and procedures which are in effect at the time the arbitration is filed.

(Robertson Decl., ¶¶ 5-12 at § 15(G)). Accordingly, the first factor – whether the parties agreed to arbitrate – is satisfied.

### C. Plaintiffs' Claims Fall Within The Scope of The Broad Arbitration Agreements In Their Unit Franchise Agreements

The second factor – whether the dispute at issue falls within the scope of the parties' arbitration agreement – is also satisfied here. Indeed, the UFAs' arbitration provisions are broad, and certainly broad enough to encompass Plaintiffs' claims. As shown above, the UFAs require arbitration of "*any* controversy arising out of this Agreement . . . ." (Robertson Decl., ¶¶ 5-12 at § 15(G) (emphasis added)). Thus, the

arbitration provision governs all aspects of Plaintiffs' relationships with Defendants. Relevant here, the arbitration provision clearly applies to Plaintiffs' claims for restitution of franchise fees, which were paid under the terms of the UFAs and their related agreements. In addition, the arbitration provision also applies to Plaintiffs' statutory claims for wages and benefits, which are based on Plaintiffs' allegations that Defendants misclassified them in the UFAs as franchisees as opposed to being classified as "employees." Because all of Plaintiffs' claims "arise out of" their UFAs, Plaintiffs' claims are subject to arbitration in accordance with the UFAs' arbitration provisions.

To the extent Plaintiffs attempt to argue that their "statutory" claims are not subject to arbitration, that argument has also been rejected by the Eighth Circuit, which has held that the "strong federal policy [favoring arbitration] applies equally to claims grounded in statutory rights. *Franke*, 555 F.3d at 658. Indeed, "[t]he Supreme Court has established that an arbitral forum is . . . adequate to preserve statutory rights and adjudicate statutory claims." *Faber*, 367 F.3d at 1052 (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89-90) (2000), and *Gilmer*, 500 U.S. at 35). Thus, on numerous occasions, the Eighth Circuit and the District of Minnesota have compelled arbitration of a wide-range of statutory claims. *See, e.g.*, *Franke*, 555 F.3d at 658 (compelling arbitration of ERISA claims); *Faber*, 367 F.3d at 1048 (compelling arbitration of ADEA and state statutory claims); *Arkcom*, 289 F.3d at 539-40 (compelling arbitration of state statutory claims); *Siebert v. Amateur Athletic Union of the United States, Inc.*, 422 F. Supp. 2d 1033, 1045-46 (D. Minn. 2006) (compelling arbitration of claims under Minnesota Human Rights Act and ADA).

Further, the Eighth Circuit has expressly held that broad arbitration agreements require arbitration of statutory wage and benefits claims, such as the type at issue here. *Bailey v. Ameriquest Mortg. Co.*, 346 F.3d 821, 822-24 (8th Cir. 2003).  In *Bailey*, the district court refused to compel arbitration of plaintiffs' FLSA claims after concluding that the parties' arbitration agreement limited plaintiffs' remedies and thus was inconsistent with the FLSA.  *Id.* at 823.  In its order reversing the district court and compelling arbitration, the Eighth Circuit recognized "that the extent of an arbitrator's procedural and remedial authority are issues for the arbitrator to resolve in the first instance."  *Id.* at 824  According to the court, arbitrators "are perfectly capable of protecting statutory rights" because "[w]hen an agreement to arbitrate encompasses statutory claims, the arbitrator has the authority to enforce substantive statutory rights, even if those rights are in conflict with contractual limitations . . . ."  *Id.* at 823-24; *see also Faber*, 367 F.3d at 1054 ("[t]he arbitrator is particularly well-suited to interpret the agreement and determine the appropriate extent of remedial authority").  Thus, the court declined to circumscribe the arbitrator's remedial authority and compelled plaintiffs to arbitrate their FLSA claims.  *Id.* at 823-24.[4]

Accordingly, Plaintiffs' statutory claims, as well as their other claims, fall squarely within the scope of the parties' broad arbitration agreements and Plaintiffs must therefore each be compelled to arbitrate his or her claims.

---

[4] Courts in other jurisdictions have also compelled arbitration of statutory wage and benefits claims.  *See, e.g.*, *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297-98, 301 (5th Cir. 2004); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir. 2002); *Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 331-33 (S.D.N.Y. 2003).

## II.   The Court Should Dismiss Plaintiffs' Class Claims Because Their Unit Franchise Agreements Prohibit Them From Bringing Class Action Claims.

In addition to compelling Plaintiffs to arbitrate their claims, the Court should also dismiss all class allegations in Plaintiffs' Complaint because Plaintiffs expressly agreed not to bring or participate in any class action against Defendants.

In *Pleasants v. Am. Express Co.*, 541 F.3d 853, 858-59 (8th Cir. 2008), the Eighth Circuit joined the growing number of courts to hold that contractual provisions waiving the class action process are enforceable. In *Pleasants*, the court granted defendant's motion to compel plaintiffs to arbitrate their claims on an individual basis, where the court found that the arbitration and class action waiver provisions of the parties' agreements were not unconscionable. *Id.* Courts in other jurisdictions have reached the same result. *See, e.g.*, *Carter*, 362 F.3d at 298 (affirming order compelling arbitration and rejecting plaintiffs' argument that arbitration agreement's class/collective action waiver provision was unenforceable because it deprived plaintiffs of right under FLSA to bring collective action); *Livingston v. Assocs. Fin. Inc.*, 339 F.3d 553, 559 (7th Cir. 2003) ("The Arbitration Agreement at issue here explicitly precludes [plaintiffs] from bringing class claims or pursuing 'class action arbitration,' so we are therefore obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis"); *Adkins*, 303 F.3d at 503 (finding that nothing in the FLSA suggested that "Congress intended to confer a nonwaivable right to a class action under that statute" and

thus affirming order dismissing plaintiffs' class action complaint and compelling arbitration on an individual basis).[5]

Here, in their UFAs, Plaintiffs voluntarily and knowingly agreed that "any *arbitration*, suit, action *or other legal proceeding* shall be conducted and resolved on an individual basis only and not on a class-wide, multiple plaintiff, consolidated or similar basis." (Robertson Decl., ¶¶ 5-8, 11-12 at § 15(I) (2008 and 2009 UFAs), ¶¶ 5-6, 8-10, 12 at § 15(G) (pre-2008 UFAs) (emphasis added)). Accordingly, like the plaintiffs in *Pleasants*, Plaintiffs are contractually barred from pursuing any class action claims. Thus, all class claims in Plaintiffs' Complaint should be dismissed for this additional reason.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request this Court to enter an Order dismissing Plaintiffs' Complaint or in the alternative, staying all further proceedings in this Court and compelling Plaintiffs to submit their claims to arbitration, in accordance with the terms of their Unit Franchise Agreements.

---

[5] Even if the UFAs did not contain a clear class action waiver provision (which they do), several courts have held that a court cannot order an arbitrable matter to proceed on a class-wide basis absent a specific provision in the parties' arbitration agreement allowing for a "class" arbitration. *See, e.g.*, *Gammaro v. Thorp Consumer Discount Co.*, 828 F. Supp. 673, 674 (D. Minn. 1993) (finding that the court was "without power to order this matter to proceed to arbitration as a class action" where the arbitration agreement did not expressly provide for class relief). Here, unlike *Gammaro*, the UFAs are not silent on the issue of class-wide arbitration – they expressly *preclude* such class relief.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: October 2, 2009 | DORSEY & WHITNEY LLP |

By: ___s/ Nicole Haaning___
     Nicole Haaning
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone: (612) 492-6635
Fax: (612) 340-2868
Haaning.Nicole@dorsey.com

Sari M. Alamuddin (to be admitted *pro hac vice*)
John W. Drury (to be admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, 5th Floor
Chicago, Illinois  60601
Telephone: (312) 324-1000
Fax:  (312) 324-1001
salamuddin@morganlewis.com
jdrury@morganlewis.com

Rebecca Eisen (to be admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, California 94105
Telephone: (415) 442-1328
Fax: (414) 442-1001
reisen@morganlewis.com

*Attorneys for Defendants*